## Case No. 4,842.

### FITZPATRICK v. DUBOIS et al.

[2 Sawy. 434.][1]

Circuit Court, D. Oregon. May 26, 1873.

John H. Woodward, for complainant.
Reuben P. Boise, for defendants.

DEADY, District Judge. This suit was commenced on May 30, 1872, and is brought to "declare and establish" the rights of the parties thereto, in and to a certain tract of land, described in the bill as claim 98, containing 321.80 acres, and situated in Marion county, and to procure a partition thereof. The defendants answered the bill, except Dubois, who made default.

On February 17, 1873, the cause was heard and submitted on the bill, answers, replications and proofs. A large portion of the evidence taken in the cause is irrelevant and incompetent, but the material facts are not seriously disputed. They appear to be as follows:

In 1840 the defendant, Andrew Dubois, and Margaret, his wife, were settled upon a land claim of six hundred and forty acres, which included the premises in controversy. In 1843 said Margaret died, and in 1845 said Andrew married one Josette ——, now Josette Jeffries, and thenceforth they two resided on said land claim until March, 1851, when said Josette left the bed and board of said Andrew. On June 9, 1852, said Andrew

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

duly obtained a divorce from said Josette, who in June, 1853, was married to Edward Jeffries, with whom she still lives.

In September, 1852, said Andrew notified as a married settler upon said land claim under section four of the donation act of September 27, 1850, and made proof of the required residence and cultivation thereon, and of his marriage with his first wife, Margaret. On October 31, 1864, the register and receiver issued a certificate for the claim to said Andrew and Margaret. Upon examination of the matter in the general land office, it appearing that said Margaret had died before the donation act, and therefore was not entitled to land under it, the register and receiver, under the direction of said office, issued a corrected certificate in favor of said Andrew as a single man for three hundred and twenty acres, upon which, on June 16, 1868, a patent was issued to him for the premises in controversy.

Subsequently Josette made a claim in the local land office to the one half of said claim, upon the ground that she was the lawful wife of said Andrew from January, 1845, to March, 1852. Thereupon said patent was withheld from delivery, and a hearing of the parties had before the register and receiver, who decided in favor of Josette. This decision was reversed in the general land office upon the ground that, although Josette had an undoubted "right to one half of the claim in her own right, which she could have disposed of in any manner she thought fit," yet she had lost it by abandonment and "disclaimer of any right therein."

The defendants—Hall, Smith and Brown—are American citizens, and in possession of the premises, and claim title thereto as sole tenants in fee, by virtue of sales and conveyances thereof by defendant Dubois in the years 1855 and 1856, as follows: Hall of one hundred acres; Smith of one hundred and seventy acres, and Brown of fifty acres. On May 6, 1872, the said Edward and Josette Jeffries executed a conveyance of the premises to the complainant, who is a subject of Great Britain.

Upon this state of facts, counsel for the complainant maintains that Dubois and Josette, being husband and wife at the passage of the donation act of September 27, 1850 (9 Stat. 497), and then settled upon the land in question, the title thereto vested in them immediately, as tenants in common, subject to the performance of the subsequent conditions of notification and proof of residence and cultivation; and that it being the duty of the husband to notify the surveyor-general of the precise tract claimed under the law, and otherwise comply with the provisions of the act, so as to entitle himself and wife to a patent for the donation, the failure to obtain a patent to the whole six hundred and forty acres settled upon is the fault of the former and not the latter, and the consequent loss must at least be borne by the husband equal-

ly with the wife, and therefore she is entitled to an undivided half of the three hundred and twenty acres described in the patent.

On the other hand, counsel for the defendants insists that the performance of all the duties imposed upon the settler by the donation act are conditions precedent to the vesting of title in him, and therefore no estate vests in the settler or his wife until the making of the notification and completion of the four years residence and cultivation required by the act, and that Dubois being a single man when he made his notification, was not entitled to take or claim a donation for his late wife Josette, or any one but himself.

The provisions of the donation act [9 Stat. 497] bearing upon the question are as follows: Section 4 enacts: "That there shall be and hereby is granted to every white settler or occupant of the public lands * * * now residing in said territory, and who shall have resided upon and cultivated the same for four consecutive years, and shall otherwise conform to the provisions of this act, the quantity of one half section, or three hundred and twenty acres of land, if a single man, and if a married man, * * * the quantity of one section, or six hundred and forty acres, one half to himself and the other half to his wife, to be held by her in her own right; and the surveyor-general shall designate the part enuring to the husband and that to the wife, and enter the same on the records of his office."

Section 6 requires: "That within three months after the survey has been made, or where the survey has been commenced, then within three months from the commencement of such settlement, each of said settlers shall notify the surveyor-general to be appointed under this act of the precise tract or tracts claimed by them respectively under this law."

Section 7 requires: "That within twelve months from the survey or the settlement, when the latter is the second in point of time, the settler must make proof before the proper officer 'that the settlement and cultivation required by this act had been commenced; and at any time after the expiration of four years from the date of such settlement, whether made under the laws of the late provisional government or not, shall prove in like manner, by two disinterested witnesses, the fact of continued residence and cultivation required by the fourth section of this act;' and upon such proof being made, such officer shall issue a certificate 'setting forth the facts in the case, and specifying the land to which the parties are entitled.'"

In Chapman v. School Dist. [Case No. 2,607], this court held that section 4 of the donation act "is a grant in the present and gives the fee simple to every settler who avails himself of its provisions from the date of his settlement; but until the completion of the subsequent conditions of residence and

cultivation and proof thereof, it is an estate upon condition—what is known at common law as a base or conditional fee—subject to be defeated or lost by a failure to perform the conditions upon which it is held. But it is an estate in fee, nevertheless, and upon the completion of the residence and cultivation or other conditions, it becomes absolute and unqualified."

Thus far this ruling has been followed, and is, therefore, in this court, the law of this case. According to it the title—the estate in fee in the lands—vests in the settler from the date of his settlement, and the conditions of residence and cultivation are subsequent and not precedent.

But the case does not decide what constitutes a settlement, or whether the notification of "the precise tract claimed" is a condition precedent or subsequent to the taking effect of the grant. Precedent conditions are such as must happen or be performed before the estate can vest or be enlarged; subsequent are such, by the failure or nonperformance of which an estate already vested may be defeated. 2 Bl. Comm. 154.

The case turns upon the determination of this question. For if the settlement, in contemplation of the act, was commenced while Josette was the wife of Andrew, then the right to the donation in equal parts was vested in the settler and his wife, and the subsequent divorce in no way affected it. The act imposed no duty upon the wife in connection with the land. The right to make the location and settlement is given to the husband, and the corresponding duty of performing the conditions is imposed upon him, and if he chose to complete the residence and cultivation and make proof thereof, notwithstanding the divorce, the effect of such compliance with the act enures to the benefit of the wife as well as himself.

In Fields v. Squires [Case No. 4,776] it was held that: "The settlement of a married man is intended for the benefit of his wife as well as himself, to enable her to obtain her equal share of the bounty of the grantor. A married man may occupy less land than the law permits. He may have good reasons for so doing. A particular half section may be deemed of more value than any whole one, open to settlement. In this respect the act commits the interest of the wife to the judgment and thrift of the husband. But he cannot change the law, and elect to take as a single man to the exclusion of the wife. The exclusive power of the husband is confined to the selection and location of the land. In any event, the land embraced in the settlement, whether a whole section or less, is granted to the husband and wife in equal parts."

Mere indefinite occupancy of the public lands did not constitute any one "a settler" nor make a "settlement" thereon under the donation act. Such occupation must be upon a particular tract, having the form or bound-

aries required by the act, and with the intent to acquire the same.

Neither did residence and cultivation, however commenced or prolonged, bring a party within the purview of the act, so as to vest in him any estate or interest in the land. Notice to the surveyor-general of "the precise tract claimed," was the first act which brought the occupant within the operation of the law. By this means he signified his intention to avail himself of the benefits of the act, and his acceptance of the proffered grant. Thereafter, but not before, the grant was located and confined to the land described in his notification, unless, as was the practice, the settler had leave to withdraw his notification and abandon that location.

This notification by the occupant was what constituted him "a settler," and his occupation thereby became "a settlement" under the act, as well as in fact. Doubtless it should be held to relate back to the beginning of his occupation, or to the passage of the act, when the occupation commenced prior thereto. But without this notification the occupant could never acquire any legal relation to the land, or the government be deprived of its ownership thereof.

In this respect the donation act is unlike the grants in the cases cited by counsel for complainants—namely, Rutherford v. Green's Heirs, 2 Wheat. [15 U. S.] 196; Fremont Case, 17 How. [58 U. S.] 557; Hornsby v. U. S., 10 Wall. [77 U. S.] 235. In all these cases there was a grant of a specific quantity of land within certain exterior limits to a particular person. The courts held that such grants passed a present interest to the grantee, as against the government, subject to the right of the latter to locate the grant within the exterior limits according to the terms thereof, and the general law upon the subject. In the language of the cases the general gift then became a particular one.

But here the grantee is not named, otherwise than as one included within a description of a class of persons who may take, and the selection and notice to the grantor of the precise tract claimed depended upon the former, and involved in fact his acceptance of the proffered grant.

It follows from these premises that the act of notification is a condition precedent to the vesting in the occupant of any estate or interest in the land.

Apply this conclusion to the case at bar. On June 9, 1852, when Andrew was divorced from Josette, he was a mere occupant of the public lands. Whether he should become "a settler" thereon, and a donee under the act, of the land occupied by him, depended upon his election to notify thereon within the time limited by the act. Josette could not compel him to notify, nor while she was his wife could she receive a donation otherwise than through her husband's acceptance of the proposed grant. But be-

fore he notified he had ceased to be a married man, and she was no longer his wife. He was only entitled thereafter to take as a single man. His former wife was now a femme sole, and entitled to become a settler in her own right. Silver v. Ladd, 7 Wall. [74 U. S.] 226. Although as a matter of fact Dubois did notify as a married man upon the whole section, he had no right to do so, and was finally held by the land department to be a single man, and allowed a donation accordingly.

It is a proposition too plain for argument, that Josette could not, after the divorce, acquire any right or interest in this land as the wife of Andrew. That relation then came to an end, and she could acquire nothing in that character thereafter. Neither did she acquire any such right before the divorce unless Andrew did. But as has been shown, the notification being a condition precedent to the vesting of any estate in the premises in Andrew, he acquired none until September, 1852, some months after the divorce. Josette, never having acquired any interest in the premises, because no estate therein was vested in either her or Andrew prior to their divorce, her vendee, the complainant, has none, and his bill, being therefore without equity, is dismissed.