FREDERICK H. RAMSEY, RESPONDENT, *v.* JAMES LOOMIS ET AL., APPELLANTS.

COMPLAINT—SUFFICIENCY OF, IN A SUIT TO REFORM A DEED.—In a complaint to reform a deed for an alleged mistake in the description of the land, the complaint is sufficient, if it set out the defective description and the true description and allege the mistake.

EVIDENCE—DEED SOUGHT TO BE REFORMED MAY BE USED FOR WHAT PURPOSE.—A deed which is defective is not so far void that in a suit to reform it, it cannot be used as evidence to prove unequivocal declarations of the grantor contained in it.

DONATION ACT—SEGREGATION UNDER.—Land claimed under the "donation act" is segregated when the notification is filed.

IDEM — SALE OF LANDS CLAIMED MAY BE MADE BEFORE PATENT ISSUES.—
    Land claimed under the "donation act," in which the settler has resided
    for four years, and cultivated it during that time, can be sold by such
    settler before the patent is issued.

MISTAKE—DEED MAY BE CORRECTED, HOW FAR.—In a suit to reform a deed,
    lands which were not included in the deed, but omitted by mistake,
    may be inserted in the deed as reformed.

APPEAL from Multnomah County.

This is a suit brought by the respondent to reform two
deeds, one made April 14, 1855, by one James Loomis
(now deceased) to Perry Baker, the other made March 7,
1856, by Perry Baker to Thomas Carter. It was brought
against the grantees in the two deeds and the heirs at law
of James Loomis, deceased.

In October, 1854, Loomis filed his notification upon a
section of land. The land was surveyed by an officer of
the land-office on the thirteenth of December, 1858, and
the survey was approved by the surveyor-general on the
twenty-seventh of July, 1860. Loomis having died in the
meantime, final proof of residence and cultivation was
made by his heirs at law, and on the eighth of March,
1866, a patent was issued to them and to the widow, Sarah
Loomis, giving to her the west half of the claim, and to the
heirs the east half.

The deed from Loomis to Perry Baker, describes the land
intended to be conveyed by it as follows: Commencing at
the north-east corner of James Loomis's claim; thence north-
west, on said claim line, one hundred and sixty rods; thence
south-west one hundred rods; thence north sixty degrees,
east one hundred and sixty rods; thence north, on said
claim line, to the place of beginning, so as to include one
hundred acres.

It is further described as a part of the donation land
claimed of Loomis. The conveyance from Baker to Carter
contains the same description. Allegations of these facts are
made. It is also alleged that it was the intention of the
grantors and grantees in both these deeds that a tract should
be conveyed, described as follows: Commencing at the north-
east corner of the donation land claim of James Loomis

and wife, and running thence south sixty degrees, west on
the line of said claim, one hundred and sixty rods; thence
south twenty-two degrees and thirty minutes, east one
hundred rods; thence, in a line parallel with said first line
one hundred and sixty rods, to the easterly line of said do-
nation land claim; and thence, on the said claim line, to the
place of beginning.   The respondent also alleges that he is
the owner in fee-simple, by mesne conveyances from Carter,
of the premises as intended to be conveyed, and that he is
in possession of a part of them.

The case having been referred, the referee found in favor
of the plaintiff, and a decree was thereupon rendered in the
court below granting the relief prayed for.

*J. J. Browne* for appellants:

The complaint does not state facts sufficient to constitute
a cause of suit.   (*Lewis* v. *Lewis,* 5 Or. 169; *Everts* v. *Stiger,*
5 Or. 141; *Wemple* v. *Stewart,* 22 Barb. 154; *Simpson* v.
*Wiggin,* W. & M. 413; *Clarke* v. *Davenport,* Bosw. 95.)

The title to public land being in the government, can only
pass from the same by patent duly issued, or by an act of
congress in words of present grant; and in the latter case,
when it cannot be ascertained from the law what land has
been granted and to whom granted, but in order to ascertain
these facts it is necessary to look to the subsequent acts of
the government, such as segregating the land by survey,
identifying the purchaser by proof, ascertaining the facts of
residence, citizenship, etc., concluded finally by issuing a
patent, then the patent passes the legal title from the gov-
ernment to the grantee.   (*Gardner* v. *Miller,* 47 Cal. 571;
*Railway Co.* v. *Prescott,* 16 Wal. 603; *Railway Co.* v. *Mc-
Shane,* 22 Id. 444; *Chant* v. *Reynolds,* 49 Cal. 217; *Gibson* v.
*Chouteau,* 13 Wal. 99; *Johnson* v. *Towsley,* Id. 72; *Keith* v.
*Cheeny,* 1 Or. 285; *Jackson* v. *Lawton,* 10 Johns. 24; *Bean* v.
*Armitage,* 47 Mo. 138.)

The right of a settler upon public lands under the dona-
tion law was a possessory right merely—no title passed to
him until his claim had been segregated by survey and the
cost of the survey paid, and until he had otherwise fully

complied with the law.   (Donation Law, secs. 4–7; *Railway
Co.* v. *Prescott*, 16 Wal. 654; *Railway Co.* v. *McShane*, 22 Id.;
*Terry* v. *Megerle*, 24 Cal. 609.)

A patent is conclusive evidence in all courts, and all forms
of judicial proceedings of the regularity of all previous
steps, and no fact behind it can be investigated except in a
direct proceeding, to set aside the patent for fraud or mis-
take, or to declare the patentee a trustee for the benefit of
some one to whom the patent should have been issued.
(*Johnson* v. *Towsley*, 13 Wal. 72; *Stenger* v. *Young*, 3 Pet.
338; *Jackson* v. *Marsh*, 6 Cow. 282; *Jackson* v. *Hart*, 12 John.
77; *Boardman* v. *Read*, 6 Pet. 342; *Cook* v. *Staats*, 18 Barb.
407; *Lessier* v. *Price*, 12 How. 74; Donation Law, secs. 4–7.)

Neither the land now in the possession of the respond-
ent, nor any other was, by the donation law, granted to
James Loomis, sen., but said land was granted by the
patent in evidence in this suit, to the heirs (the widow and
children) of James Loomis, deceased, and they thereby be-
came the legal owners by purchase, as the direct donees of
the United States.   (*Hartley* v. *Brown*, 46 Cal. 202; *Wiggins*
v. *Lusk*, 12 Ill. 135; *Phelps* v. *Kellogg*, 15 Id. 135; *Field* v.
*Squiers*, 1 Deady, 382; *Lamb* v. *Starr*, Id. 451; *Delay* v.
*Chapman*, 3 Or. 459; *Davenport* v. *Lamb*, 13 Wal. 431; *U.
S.* v. *Dickson*, 15 Pet. 165; *McDonald* v. *Smally*, 6 Id. 261;
*Hartley* v. *Brown*, 51 Cal. 465.)

The deeds from Loomis to Baker, from Baker to Carter,
from Carter to Fuller, and from Carter to Walker, are all
void upon their face for uncertainty.   The land intended to
be conveyed cannot be ascertained from the descriptions.
(*Loomis* v. *Ramsey*, Or. Dec., 1875; 2 Parson's Con. 557; 2
Phil. Ev. 278; 4 Phil. Ev. 525; *Deery* v. *Cray*, 10 Wal. 269;
*Banks* v. *Moreno*, 39 Cal. 233; 1 Greenleaf Ev. 297; 3 Bou.
Inst. 400.)

A contract void for uncertainty cannot be reformed.   "A
court of equity will make a valid contract operate according
to the intent of the parties, but will not give vitality to that
which is void upon its face."   (*Everts* v. *Stiger*, Or. Dec.,
1876; Id. 147; 3 Parson's Con. 353.)

Courts of equity have always refused their aid to stale

demands where the party has slept upon his rights, where he knew of the mistake when it was committed, or had full possession of the means of detecting it, which is the same thing, and neglects to bring his suit till after the statutory period, the suit will be barred. (Ang. Lim. 187.)

Where a written contract is entered into between two parties, having no relation of especial trust or confidence, and a knowledge of the terms of the contract, are equally open to both parties, the liability thereby created cannot be avoided, though the terms differ from the contract agreed upon orally. (*Hawkins* v. *Hawkins*, 50 Cal. 558; *Board of Com.* v. *Younger*, 29 Cal. 176; Story's Eq. J., sec. 113; 2 Kent Com. 484.)

To justify the reformation of a contract on the ground of mistake, the evidence should be such as to strike all minds alike as being free from suspicion and entirely satisfactory. (*Shay* v. *Petters*, 35 Ill. 361; *Newas* v. *Dunlap*, 33 N. Y. 676; Fry Specific Per. 312, sec. 505; *Lewis* v. *Lewis*, 4 Or. 177; *Everts* v. *Staier*, 5 Or. 169.)

The court will not interfere where the instrument itself is such as the parties intended it to be. If the parties voluntarily chose to express themselves in the language of the deed, they must be bound by it. (Story's Eq. J., sec. 113; Willard's Eq. J., sec. 69.)

The declarations of a party as to the title to real property, are a dangerous species of evidence, and should not be received as evidence of title. (*Davenport* v. *Lamb*, 13 Wal. 431; *Burr* v. *Shearman*, 6 John. 19; Greenleaf Ev. 200.)

In order to reform a written contract, to change its language so as to make it read materially different from what is expressed upon its face, three things must be established beyond a reasonable doubt, and by unquestionable proof: 1. That there was a mistake; 2. That the mistake was mutual—that the contract as written does not express the intention of either party; 3. That it was the intention of both parties to use other and different language than that expressed in the writing, and that they had agreed as to what that language should be. In other words, it is necessary to show not what one party intended,

but the understanding of both, and that their minds met and agreed. The actual agreement must be established. (Story's Eq. J., 146; *Heleman* v. *Wright,* 9 Ind. 126; *Shay* v. *Pelles et al.,* 35 Ill. 361; *Ruffner* v. *McConnell,* 17 Id. 212; *Linn* v. *Barker,* 7 Ind. 69; *McClellan* v. *Sanford,* 26 Wis. 595.)

But suppose the respondent, at the time he purchased, believed that Loomis, before his death, or that his heirs, after that time, had sold the land now in possession of the respondent, and that there was a regular chain of conveyance from them to his immediate grantors, yet would he be entitled to equitable relief? Was it not his duty, at the time he purchased, to ascertain in whom the title was vested?

"Equity gives relief only to the vigilant, and not to the negligent * * to those * * who make inquiry, and not to those who * * have chosen to omit all inquiry which would have enabled them at once to correct the mistake, or to obviate all ill effects therefrom. In short, it refuses all its aid to those who, by their own negligence, and by that alone, have incurred the loss or may suffer the inconvenience." (Story's Eq. J. 146.)

This is a suit brought, as already stated, to reform two deeds, one from Loomis to Baker, and the other from Baker to Barter. The latter has never been served with process, is not in court, and consequently is not a party to the suit. He is a necessary party to a complete determination of the questions involved in the suit. He is an indispensable party to the rendition of any decree.

Each person having an interest in the subject-matter of the suit, or who is a necessary party to a complete determination of the question involved, should be made a party either as plaintiff or defendant. (Civ. Code sec. 360; Mitford & Tyler, P. & P. 16.)

*Catlin & Killen,* for respondent:

The testimony fully establishes the location of the north line and north-west corner of the tract intended to be conveyed. In these deeds two descriptions are given, one by claim lands and one by courses. Where more than one

description is given, and there is a discrepancy, that description will be adhered to which there is the least likelihood that a mistake could be committed. Actual occupation, ancient reputation, the admissions of the party in possession against his interest, marked trees, the lines of adjoining surveys, and monuments erected at or soon after the date of the grant of adjoining surveys; these are all admissible for this purpose, though it conflicts with the courses and distances called for in the deed. (Wash. on Real Prop. 674; 2 Hill. R. P. 345; 8 How. U. S. 274.) The location of the stake on claim line, at the north-east corner of the one hundred acre tract, after the grant, became as effectual and conclusive upon the parties as if they had been in existence when the deed had been executed. (2 Hill. R. P. 366; *Jackson* v. *Vedder*, 2 Cai. 210; *Jackson* v. *Wood*, 13 John. 345; *Baldwin* v. *Brown*, 16 N. Y. 359.)

This court, in *Goodman* v. *Myrick*, 5 Or. 65, held that, in ascertaining the boundary of a donation claim, marked lines and corners are the best evidence; and when they are established, courses and distances must yield to them. (*Lewis* v. *Lewis*, 4 Or. 177; *Matthews* v. *Eddy*, Id. 225; *Newsom* v. *Greenwood*, Id. 219; *Raymond* v. *Coffey*, 5 Or. 132.)

By the Court, BOISE, J.:

The first point presented in this case, is whether the allegations in the complaint are sufficient to show a cause of suit. The complaint sets out the description of the land as contained in the defective deed, and then says that it was the intention of the grantors to convey a parcel of land, not as described in the deed, but having a description which is given, and alleges that the description in the deed does not describe the land intended to be conveyed; that the parties supposed the deed did convey the land bounded by the alleged true description. All that is necessary in the complaint is, that it shall plainly show to the court the alleged mistake which it is asked to correct, and if the false description and the true description are both set out in the complaint, the court is informed of all the facts which are necessary to enable it to grant the relief prayed for. (1 Abb.

Forms, 586; 2 Estee's Pl. 430.) It was claimed by the attorney for appellant that the original contract of sale should be set out; this is true, but it is set out. The statement in a complaint, that a party sold lot two, but by mistake, made a deed to lot one, states the whole contract so far as the description of the thing sold is concerned; by this statement the court is informed that the deed is made for lot one, and that it ought to be for lot two, and the court is asked to insert in the deed the word two instead of one. More words could not make the matter any plainer, and this is all that is required in practice. If the mistake is denied, then an issue is made, which must be determined by the evidence. Some question was made as to the amount of evidence necessary to reform a deed, when the answer denied the alleged mistake. This question was settled in the case of *Gillespie* v. *Moon*, 2 Johns. Chan. 585, where it was held that a mistake could be established by oral testimony, and such has been the practice of this court in several cases heretofore considered. (*Lewis* v. *Lewis*, 4 Or. 177; *Matthews* v. *Eddy*, 4 Id. 225; *Newsom* v. *Greenwood*, Id. 119; *Raymond* v. *Coffee*, 5 Or. 132.) In the case of *Newsom* v. *Greenwood*, in speaking of the character and amount of the evidence necessary to show a mistake in a deed, the court say, "the evidence must be clear and satisfactory, so as to establish the mistake to the entire satisfaction of the court."

In this class of cases where the deed sought to be reformed shows imperfection on its face, as it does in this case, this fact is evidence to show that it does not express the intention of the parties. The deeds in this case in the description of the land are indefinite. The first course is north-west one hundred and sixty rods; the next south-west one hundred rods; thence north sixty, east one hundred and sixty rods; thence north to the place of beginning, not giving the length of the last line. These courses cannot be literally correct and describe and bound one hundred acres of land, so it is evident the parties to the deed containing this description were in error in that description of the one hundred acres. This needs no parol proof, for it is to be

presumed the parties intended to describe and convey some definite piece of land by this deed of the area of one hundred acres. Now the plaintiff comes and in his complaint shows to the court what land it was the intention of the grantors in these deeds to convey, and the grantees to receive, and this is denied. Plaintiff claims that the land intended to be conveyed, was one hundred acres in the north-east corner of the donation land claim of James Loomis, extending one hundred and sixty rods on the north line, and one hundred rods on the east line of said claim, and being in the form of a parallelogram one hundred and sixty rods long, and one hundred rods wide. Now let us examine the evidence and see if plaintiff has proved his allegation by evidence which should fully satisfy the court.

1. Let us examine this deed which is sought to be reformed. The description in it is a parcel of land in Multnomah county, commencing at the north-east corner of James Loomis's claim; thence north-west on said claim line one hundred and sixty rods; thence south-west one hundred rods; thence north sixty, east one hundred and sixty rods; thence north on said claim line to the place of beginning, so as to include one hundred acres, and being a part of the claim held by Mr. Loomis as a donation.

It was admitted that the courses given in this case cannot agree with the claim lines, therefore claim lines which are monuments must govern, and the courses must be rejected. Thus rejecting the courses, the description is "beginning at the north-east corner." That is a fixed point, but the course having been found incorrect is rejected, and we must inquire in what direction the first course was intended to run. It was to be on the claim line, and from the north-east corner. Now let us go to the last line, which is described in these words, "thence north to the place of beginning." It must then approach the north-east corner from the south, and it comes from the end of the third line, which was one hundred and sixty rods long, and the land intended to be conveyed was one hundred acres. The length of the three first lines being given, being respectively one hundred and sixty, one hundred, and one hundred and sixty rods, and the

four lines inclose an area of one hundred acres, the fourth line must be one hundred rods long, and the long lines must be parallel to each other, as also the short lines, and the tract of land a parallelogram. And as the fourth or last line comes to the north-east corner (the place of beginning) from the south, and on a line of said land claim, this land would necessarily be in the north-east corner of this land claim, extending one hundred and sixty rods on the northern line and one hundred on the eastern line of the claim, if the land claim was bounded by lines running to the cardinal points. But the evidence shows that the northern line of the claim runs north sixty-three degrees east, and the eastern line runs north about twenty-three degrees west, so that both these lines approach the north-east corner bearing north. So we will look further into the testimony to see in which direction the first-named line, of one hundred and sixty rods, runs— that is, did it run westerly along the northern line of the claim, or along the eastern line bearing south by east?

It appears from a deed in evidence, executed by Christopher Loomis over to the heirs of James Loomis, that he recognized this land as being in the north-east corner of this land claim, and extending one hundred rods on the eastern and one hundred and sixty rods on the northern claim line, also the same in deed of George W. Fuller and wife, who were also heirs of said Loomis. William Gatton, who owned a land claim adjoining Loomis on the north, swears that he knew the lines of the Loomis claim, that he knew them as early as 1853, that there was a blazed line around the claim and stakes at the corners, and that in 1858 a surveyor surveyed the north line of this claim and set a stake on the division line between James Loomis and wife's, where that line terminates on the north line of the claim, also that said surveyor ran a part of the division line between James Loomis and wife's, and that a stake was set on this line one hundred rods from said north line. And said witness further states that James Loomis told him that he had set a stake on this division line one hundred rods from the north line of his claim, and that it was the corner of the land he, Loomis, had sold to Perry Baker, or where that piece came

to. Witness also states that Loomis told him he did not set a stake at the south-east corner of this one hundred acre tract because it came in the lake.

There is no evidence that directly contradicts these statements or tends directly to prove that the one hundred acre tract was in any other location. And the deed shows that it was the intention of James Loomis to convey one hundred acres of land, so the only matter to be determined is its location. A deed in which the description of the land is so uncertain as that the location of the land cannot be determined from the deed, is not on that account so void that it cannot be used in a proceeding to correct it, as evidence of unequivocal declarations of the grantor contained in it. In this case the deed is evidence that the piece intended to be conveyed was one hundred acres, and that it was in the said claim of Loomis, and had its north-east corner at the northeast corner of the claim, and taking all the evidence in this case, we think it is sufficient to show that the land intended to be conveyed is as claimed in the complaint, and so far as the mistake alleged in the complaint is concerned it is established by the evidence.

It was claimed in the argument that a court of equity would not correct a deed so as to make it cover land which was not mentioned in it, and consequently no relief could be granted in this case. It is a common practice of courts of equity to correct mortgages so as to cover lands which were intended to be pledged for debts, but by mistake were omitted from the mortgage, or when the mortgage described other land than that intended, to so correct it as to describe the land intended to be mortgaged. There can be no sound reason urged why a man shall have a parcel of land, which he has by mistake included in a deed, stricken out because he has not been paid for it, and not have a parcel of land inserted in a deed, which by mistake was left out, for which he has paid the full consideration, and there is no such distinction in reason or by authority. It is further claimed that no relief can be had in this case, because the final survey of this claim was not made and the exact location of the land determined until after the death of James

Loomis, and that the land went to the heirs of James Loomis by the United States patent, which, in this case, was issued to the widow and heirs; that is, that there was no segregation of the land before the final survey; we think such is not the rule. The settler is required to describe this land in his notification, and when such notification is filed, the land is segregated, and such was held to be the law in the case of *Fitzpatrick* v. *Du Bois et al.*, 2 Saw. 434, tried before the United States circuit court of Oregon, and from the time of filing the notification the settler has in the land an estate of inheritance which can be defeated only by this failure to comply with the act of congress. It is also claimed that the patent being issued to the heirs of James Loomis, that they take this land free from any incumbrance on it, created by James Loomis, whose estate in the land ended with his wife. This point has been decided adversely to this proposition by this court in the case of *Dolph* v. *Barney*, 5 Or. 191, when it was held that a settler on the public land, under the donation law of Oregon, holding under the fourth section of this act after four years' residence and cultivation had an estate in fee in the land which he could sell before he obtained a patent thereto, and that his heirs on receiving the patent after his death were bound by his deed, and took the patent subject to such sale, and that decision is decisive of this point in this case.

Having considered all the points necessary to a decision of this case, it is ordered that the decree of the circuit court be affirmed.