[ Filed February 1, 1892.]

## JOHN HALE *v.* T. J. COTTLE.

MONUMENTS — COURSES AND DISTANCES — DESCRIPTION OF LAND.— The rule that monuments control courses and distances in construing descriptions of land is not an inflexible one; and if it appear from the face of a conveyance, in the light of surrounding circumstances, that the courses and distances as given, correctly describes the land intended to be conveyed, they will of course prevail.

Multnomah county: L. B. STEARNS, Judge.

Plaintiff appeals. Affirmed.

*Moreland & Masters, W. W. Thayer, W. D. Fenton,* and *Milton W. Smith,* for Appellant.

When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either

of lines, angles, or surfaces, the boundaries or monuments are paramount. (Hill's Code, § 855; *McClintock* v. *Rogers*, 11 Ill. 279; *Martin* v. *Carlin*, 19 Wis. 454; 88 Am. Dec. 696; *Comegys* v. *Carley*, 3 Watts, 280; 27 Am. Dec. 356; *Riddlesburg I. & C. Co.* v. *Rogers*, 65 Pa. St. 416; *Esmond* v. *Tarbox*, 7 Me. 61; 20 Am. Dec. 346; *Stafford* v. *King*, 30 Tex. 257; 94 Am. Dec. 304; *Hubert* v. *Bartlett*, 9 Tex. 103; *Bartlett* v. *Hubert*, 21 Tex. 21; *Anderson* v. *McCormick*, 18 Or. 306; *Sawyer* v. *Cox*, 63 Ill. 136; *Hubbard* v. *Dusy*, 80 Cal. 281.)

Nothing can be tried in this suit except the location of the true line between plaintiff and defendant. This court in this suit will not undertake to try the legal title. (*Love* v. *Morrill*, 19 Or. 546.)

Where a plan is referred to in the grant, the survey actually made in the field is an original fact, and this survey, when proven, controls where the plan and survey conflict. (*Thomas* v. *Patten*, 13 Me. 333; *Williams* v. *Spaulding*, 29 Me. 113; *Heaton* v. *Hodges*, 14 Me. 69; 30 Am. Dec. 731; *Newman* v. *Foster*, 3 How. (Miss.) 383; 34 Am. Dec. 101; *McClintock* v. *Rogers*, 11 Ill. 279; *Steele* v. *Taylor*, 3 A. K. Marsh, 225; 13 Am. Dec. 151; *Ferris* v. *Coover*, 10 Cal. 625; *Proprietors of Clairmont* v. *Carlton*, 2 N. H. 369; 9 Am. Dec. 88; *Alexander* v. *Lively*, 5 Mon. 160; 7 Am. Dec. 50; *Chapman* v. *Bennett*, 2 Leigh, 329; *Page* v. *Scheibel*, 11 Mo. 187; *McIver* v. *Walker*, 9 Cranch, 173; *Lunt* v. *Holland*, 14 Mass. 149; *Comw.* v. *Penn.* 1 Pet. C. C. 511.)

The statement of quantity is considered as the most uncertain part of the description, and when inconsistent with boundaries, courses, or distances, must be rejected. (*Kruse* v. *Scripps*, 11 Ill. 104; *Powell* v. *Clarke*, 5 Mass. 355; 4 Am. Dec. 67; *Jackson* v. *Barringer*, 15 Johns. 471; *Newsom* v. *Pryor*, 7 Wheat. 7; *Climer* v. *Wallace*, 28 Mo. 556; 75 Am. Dec. 135; *Knight* v. *Elliott*, 57 Mo. 325; *Jacobs* v. *Mosely*, 91 Mo. 457; *Chinoweth* v. *Haskell*, 3 Pet. 96.)

The law is well settled in this state that the actual location of the lines and monuments on the ground will control over courses and distances; and if such monuments can

be ascertained, the courses and distances must give way. (*Raymond* v. *Coffey,* 5 Or. 132; *Goodman* v. *Myrick,* 5 Or. 65; *Lewis* v. *Lewis,* 4 Or. 178; *King* v. *Brigham,* 19 Or. 566.)

*R. & E. B. Williams & Carey,* for Respondents.

The plaintiff has mistaken his remedy, which should have been by ejectment, or to quiet title, or remove cloud from his title, or to declare defendant a trustee for his benefit. (Story Eq. Jur. § 615; Pom. Eq. Jur. §§ 185, 1384, 1385; *Wolfe* v. *Scarborough,* 2 Ohio St. 361; *DeVeney* v. *Gallagher,* 20 N. J. Eq. 33; *Wetherbee* v. *Dunn,* 36 Cal. 253; *Wilson* v. *Hart,* 98 Mo. 618.)

The statute, by extending the jurisdiction to all cases, simply removes the limitations which have of late years restricted the right to equitable relief in boundary cases. It confers no jurisdiction in cases that do not concern a boundary line, in the sense of the term known and recognized in equity jurisprudence. (*Love* v. *Morrill,* 19 Or. 545.)

If the plaintiff be entitled to the land in equity, it is because of a mistake in his patent, and his course must be to allege and prove the mistake and have the defendant declared the holder of the legal title in trust for him. (*Sanford* v. *Sanford,* 19 Or. 1; Sedgwick & Wait's Trial Title Land, §§ 785, 887.)

Where courses or distances are given, but no monuments are given or called for in the deed, parol evidence is not competent to control these. (3 Wash. R. P. 428; *Drew* v. *Swift,* 46 N. Y. 209; *Bagley* v. *Morrill,* 46 Vt. 94; *Williams* v. *Howard,* 3 Murph. (Tenn.) 74; *Negbauer* v. *Smith,* 44 N. J. L. 672.)

Quantity may be the controlling element of description, and is so where the intent is to grant a particular amount. (*Winans* v. *Cheney,* 55 Cal. 567; *Baldwin* v. *Brown,* 16 N. Y. 359; *Higginbotham* v. *Stoddard,* 72 N. Y. 94; Devlin Deeds, § 1030; *Sanders* v. *Godding,* 45 Iowa, 463; *Bewley* v. *Chapman,* 16 Or. 402; *McClintock* v. *Rogers,* 11 Ill. 279.)

So the courses and distances may control and do control where that appears to have been the intention; particularly

when the courses and distances harmonize with the quantity. (*White* v. *Luning*, 93 U. S. 514; *Buffalo, etc. R. R. Co.* v. *Stigeler*, 61 N. Y. 348.)

The cardinal test in all such cases is, of course, certainty; and monuments are preferred to courses and distances only when they are more certain. (Sedgwick & Wait's Trial Title Land, § 862.)

An experimental line, though marked on the ground, disagreeing with courses and distances, is not to be followed. (*Rifener* v. *Bowman*, 53 Pa. St. 313; *Kuhns* v. *Fennell*, Penn. 15 Atl. Rep. 920; *Moore* v. *Whitcomb*, Tex. 4 S. W. Rep. 373.)

And the jury may presume that some of the lines run were rejected, and that those mentioned in the deed were finally adopted. (*Bishop's Lessee* v. *Arnold*, 7 Tenn. 366.)

Acquiescence is proof of boundary. (*Baldwin* v. *Brown*, 16 N. Y. 359; *Greene* v. *Anglemire*, 77 Mich. 168; *Diehl* v. *Zanger*, 39 Mich. 601; *Brolaskey* v. *McClain*, 61 Pa. St. 146; *Majors* v. *Rice*, 57 Mo. 384.)

Cottle's occupancy was not under a mistake of true boundary, but was in accordance with his paper title, the Neff patent and the official plats. His possession is adverse and co-extensive with the bounds of his deed. (*Phillippi* v. *Thompson*, 8 Or. 428; *Joy* v. *Stump*, 14 Or. 361.)

Occupancy to the line of his deed, claiming the land as his own, and not merely with a mistake, entitles him to the land by adverse possession. (*Caufield* v. *Clarke*, 17 Or. 473; 11 Am. St. Rep. 845; *King* v. *Brigham*, 19 Or. 560; *Swope* v. *Schafer*, Ky. 4 S. W. Rep. 300.)

BEAN, J.—This is a suit to establish the boundary line between the lands of plaintiff and defendant, and is really to determine, so far as the parties to this suit are concerned, the east line of the donation claim of Marcus Neff, Notification No. 80, Claim 57, in Multnomah county. This claim is bounded on the east by the donation claims of Danford Balch, Notification No. 79, Claim 58, and of Peter Guild, Notification No. 325, Claim 54, plaintiff owning a part of

the Neff claim, and defendant a portion of the Balch and Guild claims.

In September, 1850, Neff being entitled to one-half section of land under the act of congress, approved September 27, 1850, known as the donation law, settled upon the unoccupied and unsurveyed public domain with the intention of acquiring title to three hundred and twenty acres thereof under the provisions of said act. On March 9, 1852, he notified the surveyor-general, as by law required, of "the precise tract claimed" by him, in which he stated that the south line of his claim, the length of which is in controversy here, extended to the line of Balch's claim. On February 5, 1856, he made final proof of his residence and cultivation, as required by law, and on December 31, 1862, received his certificate for a patent, in which the land is described only by courses and distances from the initial point, and as so described contained three hundred and twenty-two and eighty-nine one-hundredths acres. Upon this certificate, a patent was issued on March 19, 1866. In neither the certificate nor patent are any natural or artificial monuments referred to except the initial point at the south-west corner of section 29. By running the exterior lines of the claim according to the courses and distances given in the patent and certificate, the lines close, and the claim contains three hundred and twenty-two and eighty-nine one-hundredths acres, and the east line thereof corresponds with the admitted west line of the Balch and Guild claims as located by the government surveyor, and which defendant contends is the true location of the line in controversy. This line seems to have been recognized as the true division line by the respective owners of the property on either side thereof until 1884, when McQuinn was employed to survey the Neff claim for the purpose of partitioning it among the owners, and in so doing found what is claimed to be the original stake set by Ford and Mitchell, government surveyors, in 1854 or 1855, for the southeast corner of the claim. From this stake a blazed government line extends north to

a point, from which the only remaining witness tree for the northeast corner of the claim bears the correct course as stated in the field notes. The stake found by McQuinn, and supposed by him to be the southeast corner of the Neff claim, is three and eighty-eight one-hundredths chains east of the west line of the Balch claim, and the same distance east of the east line of the Neff claim according to the certificate and patent. The courses and distances given in the field notes of the Ford and Mitchell survey correspond with those given in the certificate and patent of the claim, and if the corner stake were actually located at the place claimed by plaintiff, its location is not correctly described in the field-notes, but is three and eighty-eight one-hundredths chains further east than as therein stated.

The contention of the plaintiff is that the monuments as located by Ford and Mitchell must prevail over the courses and distances as given in the certificate and patent, and that the line as actually run by them is the true dividing line between the claims of Neff and of Balch and Guild. It was contended by counsel for the plaintiff, both at the hearing and in an able and exhaustive brief, that where a conveyance or grant is made with reference to permanent and visible or ascertained monuments, and such monuments are inconsistent with the corners and distances given in the conveyances, the former must control. As a general rule of evidence this is undoubtedly true because the primary object in all such cases is to ascertain the location of the line actually intended by the parties, and mistakes in courses and distances are more probable and more likely to occur than in visible or ascertained monuments. But this is only a rule for construing the descriptive parts of a conveyance when the construction is doubtful, and there are no other sufficient circumstances to determine it, and is therefore not an inflexible rule in all cases. There are no fixed and certain rules by which the courts can be guided in determining this question, but they must be governed by that evidence in each particular case which carries conviction to the mind.

Certain rules have been generally recognized, which are supposed to best enable the courts to ascertain the intention of the parties—that being the controlling question in all such cases—and among these is the rule invoked by plaintiff in this case. But we have already said this is by no means an inflexible rule; and if it appear from the face of the conveyance, in the light of surrounding circumstances, that the courses and distances as given correctly describe the land intended to be conveyed, they will of course prevail. To hold otherwise would be to give to the rule itself more importance than to the reason of the rule. "Where there is anything in the description," says Mr. Justice SELDON, "which shows that the courses and distances are right, they will of course control; because the primary object in all cases is to arrive at the real intent of the parties. For instance, where it is apparent upon the face of the deed that the intention was to convey a specific quantity of land, if the courses and distances given would include that precise quantity, but the description by fixed monuments would embrace more or less, it is clear that the former should prevail. To hold otherwise would be to defeat the plain intent of the parties." (*Baldwin* v. *Brown*, 16 N. Y. 359; *Higgenbotham* v. *Stoddard*, 72 N. Y. 94; *Railroad Co.* v. *Stigeler*, 61 N. Y. 348; *White* v. *Luning*, 93 U. S. 514; *Davis* v. *Rainsford*, 17 Mass. 207.)

But we think this rule has little if any application to the facts of this case. The claim of Neff was not located according to or with reference to the Ford and Mitchell survey, nor is that particular survey in any manner referred to in the certificate or patent issued by the government. The land was located and segregated from the public domain at the time Neff notified the surveyor-general of the "precise tract claimed by him," and more than two years prior to this survey. (*Fitzpatrick* v. *Dubois*, 2 Saw. 434; *Ramsey* v. *Loomis*, 6 Or. 367.)

Under the law, it was the duty of the surveyor-general "to survey and mark the claim with the boundaries as

claimed." (Donation Law, § 6.)   By this notification, Neff
designated the west line of the Balch claim as the termina-
tion of the south line of his claim, thereby recognizing, as
is a fact, the prior location of that claim; so that, when
Ford and Mitchell, acting for the surveyor-general, under-
took to survey the Neff claim, it was their duty to survey
and mark the boundary as claimed, and they had no
authority to extend the east line thereof so as to affect the
interests of other settlers; and if they undertook so to do,
which however does not appear from their field-notes to
have been the case, it was simply an unauthorized and
invalid act, and Neff gained nothing thereby.   Had this
survey been made prior to Neff's notification, and such
notification been made with reference to the lines as actu-
ally run on the ground, there would be room for plaintiff's
contention, but such is not the case here.   The object of
the survey was to mark the boundaries of the claim as
actually located and not for the purpose of a subsequent
location.

It was assumed at the argument by plaintiff's counsel
that the Neff claim was surveyed prior to either the claim
of Balch or Guild, and therefore it was contended that the
west line of the two latter claims must yield to that of Neff
as actually run on the ground by Ford and Mitchell.   The
copy of the official plats of these claims from the surveyor-
general's office, in evidence, shows that the Guild claim is
number 54, while that of Neff is number 57; and if we are
correctly informed, the practice of that office was to number
the donation claims in the order in which they were
surveyed.   If this be the case the Guild claim was surveyed
before Neff's, and certainly in that event Ford and Mitchell
could not by any act of theirs take a portion of that claim
and attach it to the claim of Neff.   But be that as it may,
it is clear, both from Neff's notification and the official plat,
that the notification of the Balch claim was prior in point
of time to his; and when he designated the line of the
Balch claim as the termination of the south line of his

claim, we must assume that he knew the location of that line and only intended to take his claim with reference thereto. And besides when Balch filed his notification in the proper office describing, as he was required by law to do, "the precise tract of land claimed" by him, it ceased to be subject to entry as public lands, and he had the right to occupy and maintain possession thereof so as to acquire a complete title to the soil. And the mere fact, if it be a fact, that Ford and Mitchell included a portion of the land claimed by him in the survey of the Neff claim, could in no way affect the line between them. This line was clearly designated by Neff in his notification as the true dividing line, and it was the duty of the surveyor-general, in making the survey, to so recognize it, which we think clearly appears from the evidence in this case he did; and if the stake claimed by plaintiff as the southeast corner of Neff's claim was set by Ford and Mitchell, it was done by mistake.

By his certificate and patent, Neff received the evidence of title to all the land he was entitled to under the law, and all he intended to take or the government to grant. It is obvious that he did not intend to take or the government to grant any of the land east of the west line of the Balch claim, and it is equally clear that he intended to take and the government to grant only the land described in the certificate and patent. If the line as contended for by plaintiff is to prevail, Neff and his assignees will receive twenty-seven acres more than by law he was entitled to or intended to take, or the government to grant to him, and the acreage of the claims of Balch and Guild will be that number of acres less than they supposed they were getting and the government actually granted to them by patents duly issued.

Before a court would be justified in arriving at a conclusion from which such manifest injustice will result, it must be impelled thereto by the irresistible force of the facts and law in the case. The line as claimed by defendant gives to each of the parties all the land they were entitled to under

the law and all they supposed they were getting or intended
to take and all the government intended to grant, and is in
harmony with the law and the facts of this case.

The decree of the court below is affirmed.