### ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT OF OREGON,

## MARCH TERM, 1882.

WILLIAM P. LORD, *Chief Justice..*
EDWARD B. WATSON, } *Associate Justices.*
JOHN B. WALDO,

## JACKSON *v.* SIGLIN.

FEES OF OFFICERS.—Statutes which give costs are construed strictly. The rule is said to be inflexible that an officer can demand only such fees as the law has fixed and authorized for the performance of official duties.

IDEM—PROMISE TO PAY ILLEGAL FEES IS VOID.—It is a doctrine of the common law, founded on public policy, that an officer shall be confined to the compensation or fee prescribed, and therefore, a promise to pay money for doing that which the law did not suffer him to take anything for, or to pay more than was allowed by law, was void, however freely and voluntarily made.

IDEM.—A note, the consideration of which was for fees illegally charged is void.

APPEAL from Coos County. The facts are stated in the opinion.

*S. H. Hazard*, for appellant.

*N. B. Knight*, for respondent.

By the Court, LORD, C. J.:

To properly understand the question in controversy, it is sufficient to state that it appears from the transcript that

while the appellant was county clerk of Coos county, one J. D. Fry obtained a judgment in the circuit court of that county for a large sum of money, against Tom Utter et al., upon which execution was issued and real property sold to the amount of $41,000. The respondent, as the agent and attorney of said Fry, bid off the premises at this sum, but no money was paid to the sheriff except his fees, the credit being endorsed on said execution, and thus returned. The appellant seems to have considered this return as equivalent to the return of the money made on the execution, and claimed the legal commissions "for receiving, keeping and disbursing the whole amount."

The respondent denied the legal right of the appellant upon this state of facts to collect the commissions, but upon being threatened with legal proceedings, and to prevent, as he alleges, any misunderstanding with Fry, with whom he had entered into a valid agreement to pay all legal costs and expenses incident to such sale, he agreed with appellant to pay, and did pay him a portion of such commissions, and gave him the due bill sued on for the balance, upon which the appellant released Fry from further liability.

Upon this state of facts, the court below held that no action would lie to recover the amount of the due bill. The only question really presented by this record is: Was the clerk entitled to the per centum allowed by law for receiving, keeping and disbursing money, when no money was *actually* received, kept or disbursed by him? As the decision of this question involves the construction to be given to our statute regulating the fees of officers, it must be borne in mind that it was long ago settled by eminent judicial authority that statutes which give costs must be construed strictly, (Dwarris on Statutes, 253.)

Our statute allows the sheriff "for all moneys actually

made on any process and returned to the clerk, under one thousand dollars, three per centum," (Or. Laws, p. 602,) and the clerk "for receiving, keeping and disbursing money, on the first five hundred dollars, one per centum" (Or. Laws, p. 601,). The facts concede that no money was actually received, kept or disbursed by the clerk. Will the rule of strict construction, applicable to such statutes, admit of the argument that there was a constructive receiving, keeping and disbursing of this money, which entitled the clerk to his commissions?

No one will deny that whoever renders service for another ought to be suitably compensated for such service. As a general principle this is equally true in morals as in law, and applies with equal force to services rendered in public station as in private life. Our laws fixing the salaries, and in prescribing the fees of officers for services rendered, recognize the soundness of, and put in practical operation, this just principle. The instances wherein officers are required to perform services for which no compensation is provided are rare, and usually applied to officers considered honorary in their character, or include the performance of other services for which there are compensating advantages. But where an officer claims compensation without having rendered any service, or assumed any responsibility, the statute upon which he bases such right to compensation ought to express that intention in clear and unmistakable terms. For it is hardly probable that the legislature intended to require the public or individuals, to pay officers fees or their compensation without the performance of some official acts or service, and the courts certainly will not impose such liability by mere construction. The basis of allowance to an officer, Mr. Chief Justice Hosmer says, is his trouble and

risk, or in other words, his *actual* service and responsibility. (*Preston* v. *Bacon*, 4 Conn., 478.)

The evident intention of our statute was to pay the clerk for his labor and responsibility imposed in receiving, keeping and disbursing money. But where, as in the present case, there was no money received, kept or disbursed by the clerk, there could be no service performed, or official responsibility assumed by him, which would put his claim to commissions within the terms of the statute. The statute contemplates service, official acts, the performance of which are essential to establish the officer's legal right to the commission. It provides for doing certain things, the officer shall receive a certain fee or per centum, and without doing these things the statute does not contemplate that the officer is entitled to the fee or per centum. It is "for receiving, keeping and disbursing" money returned on execution which entitles the clerk to his commissions, and unless he has rendered such service he is not entitled, nor did the legislature contemplate he should receive, any compensation. (2 Wallace Ch. R., 477.) The rule is said to be inflexible that an officer can demand only such fees as the law has fixed and authorized for the performance of official duties. (*Carlisle* v. *Crump*, 25 Ark., 235.)

A strict enforcement of this principle is regarded by the courts as essential to the protection of the people and will not be repealed. "Every officer," says Mr. Justice Caruthers, "must beware that he takes no compensation for services not sanctioned by some law on the subject. He collects costs at his peril, and for each and every item he must be able to put his finger upon some particular act." (*The State* v. *Merrill*, 37 Tenn., 68.)

Ignorance of the law excuses no man, least of all an officer, for, having undertaken to perform the duties of his

office, he must know and perform them at his peril. (*York* v. *Clopton, et al.*, 32 Ga., 364.) And again, in the *American Steamship Co.* v. *Young*, 89 Penn. St., 192, the court say: "It is his special business to be conversant with the law under which he acts and to know precisely how much he is authorized to demand for his services, but with the public it is different. They have neither the time nor the opportunity of acquiring the information necessary to enable them to know whether he is claiming too much or not, and as a general rule, relying on his honesty and integrity, they acquiesce in his demands."

The demand of the appellant of the per centum charged, was without warrant or authority of law; he had performed no service which entitled him to demand such compensation; it was therefore an illegal charge, which the facts show was exacted under threats of litigation and settled by a due-bill, to avoid misunderstanding, and which, if he wilfully and knowingly charged, was an offense against public justice. (Crim. Code, sec. 636, p. 429.)

It is a doctrine of the common law, founded in public policy, that an officer shall be confined to the compensation or fee prescribed, and therefore a promise to pay money for doing that which the law did not suffer him to take anything for, or to pay more than was allowed by law, was void, however freely and voluntarily made. (*Hatch* v. *Mann*, 15 Wend., 44.) This became the settled law at an early day in England, and has been constantly adhered to by the courts of that country, and followed by the highest courts of the several states of the union. (*Lane* v. *Seawall*, 1 Chitty, 176; *Morris* v. *Burdette*, 1 Camb., 218; *Preston* v. *Bacon*, 4 Conn., 471; *Bussin* v. *Pry*, 7 Sergt. & Rawle, 447; *Churchill* v. *Perkins*, 5 Mass., 541; *Gilman* v. *Lewis*, 12 Ohio, 281.)

So, too, where an officer by virtue of his office demands and takes unauthorized and illegal fees, he may be compelled to make restitution, although such fees were paid without protest or notice of intention to.reclaim. Public policy requires that such payments shall not be considered voluntary. (*American Steamship Co.* v. *Young, supra.*) "It should be deemed sufficient," says Judge Woodruff, "that the officer takes advantage of his official position to make the exaction; due protection to those whose necessities require them to deal with persons exercising official powers, or discharging duties in their nature official, requires that money so paid should be the subject of reclamation." (*The Fire Ins. Co.* v. *Button*, 8 Bosw., 148.)

Nor in sustaining a civil action against a public officer for money illegally demanded and paid, is it necessary any turpitude should be proved against him. The action rests on no illegal purpose of the defendant in exacting the payment. It is well sustained if his official power was exercised in the collection, without warrant of law. (*Ogden* v. *Maxwell*, 3 Blatch., 319.)

The difference between a civil action and an indictment for taking illegal fees, is that in the indictment it must be shown that the illegal charge was made "wilfully and knowingly," while in an action the officer is liable, although the charge was made by mistake, and without any intention to extort. (*Miller* v. *Lockwood*, 17 Penn. St., 258.)

Certainly then, if such illegal charges may be recovered back when voluntarily paid to the officer, they never can constitute a valid consideration for any contract. Indeed it is an elementary principle that a bill or note which is founded upon an illegal consideration is void. It matters not whether such illegal consideration is opposed to public policy or interdicted by some statute, or both, the law uni-

versally condems all contracts founded upon them. (Daniels on Negotiable Instruments, sec. 196; Story on Promissory Notes, secs. 189 and 190.)

To forbear to prosecute a claim, or to compromise a doubtful one, is a good consideration for a note or bill, but, Mr. Daniels says, "the compromise of one clearly illegal is not," (sec. 196, supra.) The due-bill of the respondent is admitted in the pleadings to have been given to the appellant in payment of fees which he claimed against Fry, but which were clearly illegal and without warrant of law. Such illegal charges cannot be made the basis of any valid agreement. The due bill is therefore without any valid consideration to support it and cannot be enforced. The judgment of the court below is affirmed.

Judgment affirmed.

Dissenting opinion by WATSON, J.:

The execution commanded the sheriff to satisfy the judgment, (Civil Code, sec. 273.) The statute further provides that he shall pay the proceeds of all execution sales to the clerk upon return of the execution, (Id., sec. 293.) And that the clerk "shall then apply the same, or so much thereof as may be necessary, in satisfaction of the judgment." These provisions, it seems to me, attach the right to receive the proceeds of execution sales, and to charge the legal commission for disbursing them, to the office of the clerk. They cannot be diverted or intercepted before reaching his hands in the course pointed out by these provisions of the statute, without a violation of official duty on the part of the sheriff. This right of the clerk, I cannot but regard as one of the most important prerogatives of his office, created by the express provisions of the statute, and which can be destroyed only by an exercise of legislative power. This principle is, I think, fully sustained by authority.

In *Moore* v. *Gibbons*, 43 Cal., 377, upon a statute which provided "for commissions for receiving and paying over money on execution, without levy, or when the lands or goods levied on shall not be sold, on the first one thousand dollars, one and one-half per cent., and one per cent. on all over that sum;" the court held the sheriff entitled to the half commission allowed by the statute, although after levy and advertisement, but before sale, the execution debtor paid the amount specified in the writ, directly to the creditor therein. I quote from the opinion in the case delivered by Wallace, C. J.: "It is said, however, that as the sheriff did not in fact *receive*, nor of course *pay over* this money, he is not entitled to the commission. I am of opinion, however, that the payment made to Du Pont, under these circumstances, must be considered for this purpose, to have been made to the sheriff, whose official duty and interest it was to have received it, had it been tendered him. The statute has allowed the judgment debtor to reduce the commissions of the sheriff by one-half, should he pay off the judgment before sale actually made, but has not permitted him to deprive the officer of the whole compensation by ignoring him and making such payment directly to the judgment creditor." The court cite, as sustaining this view, *Bolton* v. *Lawrence*, 9 Wend. 435; and *Parsons* v. *Boudoin*, 17 Ind., 14.

The case of *Tell* v. *The Board of Supervisors of McLean County*, 43 Ill., 216, appears to me more directly in point. The statute of Illinois provides that "it shall be the duty of the county treasurer to receive all moneys belonging to the county, from whatever source they may be derived, and all moneys belonging to the state which by law are directed to be paid to him, and to pay and apply such moneys in the manner required by law." It also provided him a commis-

sion of one per cent. for receiving and one per cent. for paying out the county tax. The county board of supervisors levied a special war fund tax during the years 1862, 1863 and 1864, and caused such tax to be paid over directly to a special agent, by whom it was disbursed. No part of the tax ever went into the treasurer's hands, yet the court held it came within the definition of "county tax," which the treasurer was entitled to receive and disburse under the law, and as it was to be presumed the officer would have done his duty if he had been permitted, he was entitled to the statutory commissions. When it is also considered that the clerk's commissions for this service are collected on the execution as accruing costs, and that the judgment debtor is entitled to have him satisfy the judgment on the record, when proceeds of sale sufficient for the purpose have been paid over to him by the sheriff, I cannot doubt that the requirement of the statute upon the sheriff to make such payment, was intended to have some meaning, and should be given some effect.

But whether the clerk, in the present instance, was strictly entitled to the commissions claimed as such, as the authorities cited seem to declare, or not, he had rights in the premises, if the view of the law I have already expressed is not mistaken, which neither the execution creditor nor the sheriff could wholly ignore, and which certainly would support a compromise, entered into in good faith, and with full knowledge of all the material facts, as seems to have been done in this case.

The appellant's claim was not illegal. It was not prohibited by any statute, or in conflict with any principle of public policy. On the contrary, the only real objection to it was that it assumed as having been done what the law required, and the appellant had a right to demand should be

performed, but which had in fact been omitted. It could only have been impeached for want of consideration, and the law is well settled that this became immaterial after the compromise.

I can conceive of no good reason for debarring a public officer and any person for whom he has performed official service, from afterwards making a valid compromise of a doubtful right to fees and commissions. If otherwise capable of contracting, they should be accorded the same privilege of settling their disputes over doubtful rights, to put an end to a vexatious controversy and avoid the expense of litigation, as would be allowed to private individuals under similar circumstances. For these reasons I am of the opinion that the judgment should be reversed.