[Filed January 18, 1887.]

## MORROW COUNTY v. L. HENDRYX, TREASURER.

COUNTIES—LEGISLATIVE POWER OVER.—The legislature has power to divide counties and towns at its pleasure, and to apportion the common property and the common burdens in such manner as to it may seem reasonable and equitable.

MORROW COUNTY—CONSTRUCTION OF STATUTE.—The act providing for the organization of Morrow County construed.

MANDAMUS.—Upon a petition filed by Morrow County for a writ of mandamus to compel the treasurer of Umatilla County to pay over to the former certain school moneys in the hands of the defendant, collected by Umatilla County and alleged to belong to the petitioner: *Held*, that as it does not appear that such payment is "an act which the law specially enjoins as a duty resulting from an office, trust or station," the writ should be denied.

UMATILLA COUNTY.   Plaintiff appeals.   Reversed, and writ dismissed.

*L. B. Cox*, for Appellant.

*John J. Balleray*, for Respondent.

STRAHAN, J.—On the application of Morrow County, an alternative writ of mandamus was issued out of the circuit court of Umatilla County, directed to the appellant as treasurer of Umatilla County.   The command of the writ is that he pay out of the school moneys in the treasury of Umatilla County, Oregon, unto the treasurer of the county of Morrow, in said state, the sum of $2,149.32, and the further sum of $690.20; or that he appear on a day named and show cause why he has not done so.

Sec. 583 of the civil code prescribes in what cases the writ of mandamus may issue. It is as follows : " It may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. But though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of law."

At the regular session of the legislative assembly in 1885, an act was passed entitled " an Act to create the county of Morrow, and to fix the salaries of county judge and treasurer." (Session Acts, 1885, p. 239.) After sundry provisions creating the county of Morrow, fixing its boundary, locating the county seat temporarily at Heppner, providing for the representation of such new county in the senate and house, Sec. 5 of said act provides : " The county clerk of Umatilla County shall send to the county clerk of Morrow County, within thirty days after this act becomes a law, a certified transcript of all delinquent taxes from the assessment roll of 1884, that were assessed within the limits of Morrow County ; also a certified transcript of the assessment of persons and property within the limits of Morrow County for 1884 ; and the said taxes shall be payable to the proper officer of Morrow County. The county treasurer of Morrow County shall, out of the first money collected for taxes, pay over to the treasurer of Umatilla County the full amount of the state tax on the assessment roll of 1884, due from citizens of Morrow County.

Amongst other things, Sec. 10 of said act contains the following : " The County of Morrow, within one year after its organization by the appointment of its officers, as hereinbefore provided, shall assume and pay to the county of Umatilla a just proportion of the indebtedness of Umatilla County, after deducting therefrom the value of the public property of Umatilla County ; and J. L. Fuller, S. Rothschild and J. H. Kunzie, of

Umatilla County, are hereby appointed a board to determine the value of such property, and the amount of indebtedness to be assumed by said Morrow County. Said persons shall meet at the county seat of Umatilla County, on the 1st day of April, 1885, or within ten days thereafter, and take and subscribe an oath before the clerk of Umatilla County faithfully to discharge their duties; thereupon said board shall proceed with said work, and when completed file a report of their conclusions in duplicate with the clerks of Umatilla and Morrow Counties. Within thirty days of the filing of such report in Morrow County, either county may appeal from the decision of said board to the circuit court of Umatilla County, by serving a notice of appeal upon the clerk of the other county. Upon perfecting the issues in said circuit court, either county may demand a change of venue to any other county in the sixth judicial district of the state of Oregon which may be agreed upon by said counties; or, in the event of their disagreement, which may be designated by the judge of said district. The trial may be by a jury, and the judgment rendered may be enforced as other judgments against counties. If the county appealing fails to recover a more favorable judgment than the finding of said board by at least five hundred dollars, it shall pay the costs of the appeal. If no appeal be taken by either county within the thirty days above provided, the finding of said board shall be conclusive. * * *" The remainder of the section relates to the compensation of the board, and how the same shall be paid. The report of the conclusions of said board is as follows :

" To the Honorable County Courts of Umatilla and Morrow Counties :

" The undersigned—a board of commissioners created by House Bill No. 4, entitled ' an Act to create the County of Morrow, and fix salaries, etc., etc.,' approved February 16, 1885, and under said act we were called upon to adjust and determine the indebtedness and the value of property in Umatilla County, and to be assumed by said Morrow County—have performed that duty, and submit our findings herewith :

Total value of all property and assets, outstanding
taxes, etc., etc................... .........$181,636 78
Total liabilities of county...................... 187,268 14
Leaving a net indebtedness of................... 5,631 36
The proportion of this to be assumed by Morrow
County this board finds to be............... 1,149 30
Unpaid taxes 1884 turned over to Morrow County 11,567 08
Less school taxes due Morrow County, out of tax
levy of 1884........................ ..... 4,077 17

Leaving a net balance due Umatilla County from
Morrow County, of........................ $8,639 21

"A detailed statement will be found annexed.

"The board also find that there is a balance of county school
money in the treasury, derived from fines, forfeitures, etc., to
a portion of which Morrow County would be justly entitled;
but the county school superintendent and treasurer find no
authority in the laws governing disbursements of school funds
authorizing them to pay such money to Morrow County.

"This board finds that a just proportion due Morrow County
from said school fund would be $690.20, and would recom-
mend that the honorable court of Umatilla County instruct
the treasurer of said county to pay the amount to Morrow
County.

"The minutes of the proceedings of this board from day to
day are also submitted herewith.

"In compliance with an order of the honorable county courts
of Umatilla and Morrow Counties, issued at their April term
of 1885, this board, believing that their work would be expe-
dited by the assistance of an expert bookkeeper, engaged one
from Portland who was highly recommended. Said expert,
on examination of the county books and records, stated that to
make an exhibit to the correctness of which he could certify
would cost $3,000 to $8,000. This board, believing that such
an investigation and exhibit would not justify the expense
therefor, discharged him, to do the work ourselves.

"We also submit herewith various bills amounting to $456.-

15. all of which we find just and reasonable, for your approval, and order of payment of half each, by each of your honorable courts : to whom all of this we respectfully submit.

[Signed.]        " S. Rothchild,

" J. H. Kunzie,

" J. L. Fuller,

" Board of Commissioners.

"Pendleton, July 10, 1885."

The only real controversy that is now presented by this record is as to the item of $4,077.17, for which Morrow County seems to have received a credit as school taxes due it out of the tax levy of 1884.    An examination of this question will necessarily require us to consider another item of the report, because the two are so connected together that they cannot be treated of separately.

But before proceeding to a particular examination of this report, it might be well to advert to some of the more general principles of law applicable to the subject.    *Windham* v. *Portland*, 4 Mass. 389, is an early and leading case.    It is there said : " If a part of its (an incorporated town) territory and inhabitants are separated from it, by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some new provision should be made by the act authorizing the separation.

So in *Laramie County* v. *Albany County*, 92 U. S. 307, it is said: " * * * The constant practice is to divide large counties and towns, and to consolidate small ones, to meet the wishes of the residents, or to promote the public interests, as understood by those who control the action of the legislature.    Opposition is sometimes manifested; but it is everywhere acknowledged that the legislature possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the common burdens in such a manner as to them may seem reasonable and equitable."    The same doctrine is maintained in *Canova et al.* v. *Comm'rs of Bradford Co.*,

18 Fla. 512; *Trinity Co.* v. *Polk Co.*, 58 Tex. 321; *Pulaski County* v. *Judge of Saline Co.*, 37 Ark. 339; *Supervisors of Chickasaw Co.* v. *Supervisors of Sumner Co.*, 58 Miss. 619; *Eagle* v. *Beard*, 33 Ark. 497; *State* v. *McFadden*, 23 Minn. 40; *Askew* v. *Hale Co.*, 54 Ala. 639; *Comm'rs of Currituck Co.* v. *Comm'rs of Dare Co.*, 79 N. C. 565; *Comm'rs of Sedgwick Co.* v. *H. W. Bunker*, 16 Kan. 498.

It is therefore only necessary to determine what provision the legislature has made, in order to ascertain what are the rights and liabilities of the two counties. All there is in the act which materially affects the question of taxes, is in section 5. By that section the clerk of Umatilla County is required, within thirty days after the act became a law, to send to the county clerk of Morrow County : *first*, a certified transcript of all delinquent taxes from the assessment roll of 1884, that were assessed within the limits of Morrow County ; and, *second*, a certified transcript of the assessment of persons and property within the limits of Morrow County for 1884. It is expressly provided that said taxes shall be payable to the proper officer of Morrow County. In addition to this, it is further provided in said section that the county treasurer of Morrow County shall, out of the first money collected for taxes, pay over to the treasurer of Umatilla County, *the full amount of State tax* on the assessment roll of 1884, due from the citizens of Morrow County. The reason and justice of this latter provision are apparent. By the assessment and return of taxes for the year 1884, Umatilla County had become liable to the state for the entire amount of state taxes on the roll for that year, and this part of the act simply provides for the reimbursement of said county to the extent of the *state taxes* assessed against persons resident in Morrow County. This is the full extent of the liability imposed by the act on Morrow County, in relation to the taxes of 1884. The amount to be paid to Umatilla County, under this part of the act, may be ascertained by an examination of the assessment roll, and was not referred to the board created by section 10, and they had nothing whatever to do with it. The item $11,567.08, from which is deducted the

other item of $4,077.17, were both placed in the report of the board under a misapprehension of said board as to the extent of their powers under the act, as well as the true construction of Sec. 5 ; and, therefore, the report must be construed as if these items had not been included therein.  They are separate and severable from the residue of the report, and their exclusion will not materially affect the other work of the board ; or, at least, the remaining part of the report in no manner depends on these items.

Section 10 of the act clearly and concisely defines the whole power and authority of the board.  It is in substance to determine what would be a just proportion of the indebtedness of Umatilla County, which Morrow is required to assume and pay, after deducting therefrom the value of the public property of Umatilla County.

If we have not entirely misunderstood this report, the board has assumed that by the terms of the act in question Umatilla County was entitled to receive back from Morrow the entire amount of taxes for the year 1884, which were certified to Morrow County under section 5.  If this is the true construction of the report, it is based on a misapprehension on the part of the board as to the extent of Morrow County's rights and liabilities under the act.  If Morrow County has not yet paid to Umatilla County the amount of *state taxes* on the roll of 1884, assessed against persons resident in that county, she can still do so; but this report is not to be taken as the measure of her liability in this respect.

As to the school taxes directly involved here, there are not sufficient facts before us to enable us to determine the matter on this record.  If Umatilla County has in her treasury school moneys derived from taxes which of right belong to Morrow County, the matter must be litigated in some other appropriate proceeding, or determined in some other way.  The facts upon which such right is supposed to depend do not appear in this record ; and we could not render a judgment which would determine the final rights of the counties interested, without doing a possible injustice to the one or the other.

We do not find that the payment of this money by the appellant to the treasurer of Morrow County is "an act which the law specially enjoins as a duty resulting from an office, trust, or station." Our attention has not been called to any statute which creates or imposes the duty, and we know of none. We therefore reverse the judgment of the court below, and remand the cause with directions to dismiss the writ.

All concur.