## BAKER COUNTY *v.* BENSON.

[66 Pac. 815.]

PUBLIC OFFICERS—RIGHT TO FEES.

1. The right of a public officer to compensation must be based on a constitutional or statutory provision, and he can demand only those fees there prescribed: *Houser* v. *Umatilla County,* 30 Or. 486, cited.

PUBLIC OFFICERS—CHARGES AGAINST STATE OR COUNTY.

2. Public corporations, being instrumentalities of government, are not impliedly under obligation to pay public officers for services rendered to them, there must always be a legal provision for every charge for such services.

COUNTY CLERK—STATUTES.

3. Under a statute providing a salary for a county clerk, to be exclusive of all other charges and compensation, except for furnishing copies to private parties, a county is a private party as to the clerk of another county, and the clerk may properly charge the other county for copies of his records.

PUBLIC OFFICERS—SERVICES TO PUBLIC CORPORATIONS.

4. A public officer is not entitled to demand in advance his legal charges for making copies of records for a county.

CONSTITUTION—STATUTES.

5. Under the Constitution of Oregon, Art. I, § 18, providing that no man's particular services shall be demanded without just compensation being first assessed and tendered, "except in the case of the state," a public officer who is required to perform certain duties for a public corporation and is entitled to collect fees therefor, cannot insist on having his money before doing the work, since the public corporation is a part of the state, and therefore within the excepting clause.

ANNEXATION OF COUNTIES—APPORTIONING DEBT.

6. It is not an objection to an act annexing part of one county to another county that the former has a right to the taxes for the current year to use for its current expenses and debt, of which it cannot be deprived by an arbitrary legislative act, where the act provides that the county to which the land is annexed shall pay a stated just proportion of the indebtedness of the county from which the land is taken.

CONSTITUTIONAL LAW—COLLATERAL PROCEEDING.

7. It is a general rule that in a collateral proceeding the constitutionality of a statute will not be considered; thus in a mandamus proceeding by Baker County to compel the clerk of Union County to make and deliver to it certain transcripts as required by a legislative act annexing part of Union County to Baker County, the court will assume that the act is valid: *Stevens* v. *Carter*, 27 Or. 553, followed.

DESCRIPTIONS—COURSES—MONUMENTS.

8. It is a general rule that monuments control courses and distances in construing descriptions of land, but this must yield to the superior rule that the entire instrument must be considered with its surrounding circumstances and upheld if reasonably possible. For example, a legislative act (Laws, 1901, p. 435), annexing part of one county to another, described the boundary line of the annexed portion, in part, as running east along a certain township line to the W. county line; thence easterly along the W. county line to a river. The W. county line referred to ran in an easterly direction along the summit of certain mountains to a particular point, and thence due east to the river referred to; and the township line, when extended as described, did not intersect, but ran south of, the summit of the mountains. It was held that the court would assume that the legislature intended the line to be extended east to the river, unless it intersected the county line, in which event it was to follow the county line, and that by thus disregarding the county line the description was sufficiently certain, and the act valid.

LOCAL AND SPECIAL LAW.

9. An act annexing a part of one county to another county, such as (Laws 1901, p. 435), adding to Baker County a part of Union County, is both local and special, within the meaning of the State Constitution, Art. I, § 21, stating the conditions on which certain "local and special laws" may take effect.

CONSTRUCTION OF CONSTITUTION—SUBMISSION TO POPULAR VOTE.

10. The expression in the State Constitution, Art. I, § 21, that no law shall be passed, the taking effect of which shall be made to depend on any authority, except as provided by the constitution, "provided local and special laws may take effect or not, upon a vote of the electors interested," is neither a grant nor a limitation of power, but merely a qualification on the preceding clause, and does not make it obligatory on the legislature to submit to the interested electors the question whether certain territory in one county should be separated therefrom and annexed to another, and a special act providing for such annexation is not unconstitutional because it is conditioned on popular approval through the ballot.

CONSTITUTIONALITY OF CHANGE IN SENATORIAL DISTRICTS.

11. An act annexing part of a county in one senatorial district to another county in the different district is not unconstitutional as violating the State Constitution, Art. IV, §§ 3, 5, 6 and 7, regulating the apportionment of senators among the several counties.

From Union: WM. R. ELLIS, Judge.

Mandamus by Baker County, a municipal corporation, against George W. Benson, county clerk, and *ex officio* clerk of the circuit court of Union County, to compel the defendant to make out and deliver certain transcripts to the clerk of Baker County, and also to deliver certain original papers on file in his office. From a judgment awarding a peremptory writ, defendant appeals.                                      AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. Thos. H. Crawford, J. M. Carroll,* and *C. E. Cochran.*

For respondent there was a brief and an oral argument by *Messrs. Samuel White,* district attorney, *Chas. A. Johns,* and *A. B. Winfree.*

MR. JUSTICE MOORE delivered the opinion.

This is a mandamus proceeding to compel the defendant, as county clerk and *ex officio* clerk of the circuit court for Union County, to perform an act which it is alleged the law specially enjoins upon him as a duty resulting from his office. The facts are that by an act of the legislative assembly which took effect March 1, 1901, purporting to annex a part of Union County to the County of Baker, the clerk of Union County was required, within thirty days after said act should become operative, to make out and deliver to the clerk of Baker County certain transcripts, and also to deliver certain original papers on file in his office: Laws, 1901, p. 435. An alternative writ, averring that the defendant refused and still refuses to discharge the duty so enjoined upon him, having been issued, commanding him to perform the same, or show cause why he had not done so, for return thereto he denied the material averments contained therein, and alleged, in effect, the following separate defenses: (1) That he is entitled to ten cents per folio for making transcripts of the records and files of his office; that, having been requested to comply with the provis-

40 OR.—14.

ions of said act, he demanded that the plaintiff pay or agree
to pay him, upon delivery of said transcripts, his legal fees
therefor; that the plaintiff refused to pay or to agree to pay
such fees, or any part thereof, whereupon he refused and still
refuses to make said transcripts, or to deliver the same or the
original papers to plaintiff.   (2) That the territory attempted
to be so annexed includes taxable property of the value of
about $450,000; that the taxes levied thereon by Union County
for the year 1901 amounted to about $12,000, and the delin-
quent taxes due thereon about $1,100, which constitute a part
of the fund out of which Union County must pay its current
expenses and pro rata share of the state taxes for the present
year; and that it has a vested right to said tax, of which it
cannot be deprived by the legislative assembly.   (3) That by
an act of the legislative assembly approved February 27, 1901
(Laws, 1901, p. 175), the state taxes for the succeeding five
years were apportioned among the several counties of the state,
based upon their average assessment for the five preceding
years, and in the assessment of Union County for that period
was included the valuation of the property attempted to be
annexed to Baker County; that the rate of taxation so de-
manded from Union County for state purposes is .0262, while
that required of Baker County is only .0195; that in the at-
tempt to annex said territory no provision was made for reim-
bursing Union County for any part of said taxes to be paid by
it for the five years ensuing on account of the taxable property
in said territory, thereby imposing upon said county an un-
equal rate of assessment and taxation, which, if upheld, would
compel it annually to pay about $3,000 more than its pro rata
share of the state tax; and that the defendant is a taxpayer in
said county, and as such has a beneficial interest in the rate of
taxation imposed upon it.   (4) That some of the calls describ-
ing the boundary of said territory attempted to be attached to
Baker County do not meet or intersect, thereby rendering the
description void for uncertainty.   (5) That the act attempt-
ing to change the boundaries of Union County is local and
special, and, not having been submitted to the electors residing

in the territory attempted to be annexed, to take effect or not upon their vote, the act contravenes Article I, § 21, of the Constitution of Oregon, and is therefore void. (6) That by the act of the legislative assembly filed in the office of the Secretary of State February 7, 1899 (Laws, 1899, p. 7), a regular decennial apportionment bill was passed, repealing all prior acts in relation thereto, whereby the counties of Morrow, Umatilla, and Union were constituted the Twenty-Second, Union and Wallowa the Twenty-Fourth, and Baker, Harney, and Malheur the Twenty-Fifth, senatorial district, each district being entitled to one senator; that, at the time the enumeration was made upon which said apportionment was based, the territory so attempted to be annexed to Baker County contained between three thousand and four thousand inhabitants, and the attempt of the legislative assembly, within the period of ten years from said apportionment, to change the boundaries of the Twenty-Second and of the Twenty-Fourth senatorial districts, and transfer said inhabitants to the Twenty-Fifth, contravenes sections 3, 5, 6, and 7 of Article IV of the state constitution. A demurrer to each of said defenses on the ground that it did not state facts sufficient to constitute a defense having been sustained, the defendant declined further to plead or answer, whereupon the court awarded a peremptory mandamus, from which judgment he appeals.

Examining the separate defenses in the order in which they are alleged, the first question to be considered is whether the defendant, as clerk of Union County, can be compelled to deliver the transcripts required without being paid therefor by Baker County. His counsel contend that the statute has prescribed his salary, which is in lieu of all fees or other compensation for his services (Laws, 1895, p. 77), except for furnishing to private parties copies of the records and files of his office, for which he is entitled to charge them ten cents a folio (Laws, 1901, p. 285); that Baker County is a private party, within the meaning of said act, and obliged to pay the fees prescribed for the performance of the duty enjoined, and, not having done so upon a demand therefor, the court erred in

issuing the peremptory writ. Plaintiff's counsel maintain, however, that, the act requiring the defendant to prepare and deliver the transcripts and papers not having provided for the payment of any fees, the work required is a part of his official duty, for the performance of which he is entitled to no compensation other than such salary.

1. The rule is well settled that the right of a public officer to compensation results from the constitution or a statute, and, unless the fees or salary is so attached to his office, he is entitled to none: *Steubenville* v. *Culp,* 43 Am. Rep. 417; *Fitzsimmons* v. *City of Brooklyn* (N. Y.), 7 N. E. 787 (55 Am. Rep. 835); *Conner v. City of New York,* 2 Sandf. 355; *Butler* v. *Pennsylvania,* 51 U. S. (10 How.) 402. When the compensation of a public officer is not limited by the constitution, he takes his office subject to such additional burdens as the legislative assembly may impose, and must discharge the attached duties without remuneration, unless the law provides for the payment thereof: *Haynes* v. *State,* 3 Humph. 480 (39 Am. Dec. 189); *Turpen* v. *Commissioners,* 7 Ind. 172; *Board* v. *Blake,* 21 Ind. 32; *People* v. *Devlin,* 33 N. Y. 269 (88 Am. Dec. 377); *Palmer* v. *City of New York,* 2 Sandf. 318. The constitution makes no provision for the payment to a county clerk of any compensation, and, his duties being subject to legislative control, the question arises, has the statute under consideration imposed upon him the burden of preparing the transcripts required, without providing for any fees therefor? The rule is inflexible that a public officer can demand only such fees as the law has prescribed for the performance of his official duties: *Jackson* v. *Siglin,* 10 Or. 93; *Pugh* v. *Good,* 19 Or. 85 (23 Pac. 827); *Houser* v. *Umatilla County,* 30 Or. 486 (49 Pac. 867).

2. The statute having provided for the payment of ten cents per folio for copies of the records and files in a county clerk's office furnished to a private party, it remains to be seen, when viewed in the light of the rules announced, whether Baker County is such a party, in respect to the clerk of Union County. In *Cole* v. *White County,* 32 Ark. 45, Mr. Justice

HARRISON, in construing a statute which provided that, in all cases where any officer or person is required to perform any duty for which no fees are allowed by any law, he shall be entitled to recover such pay as would be allowed for similar services, said: "Such general provision, however, does not embrace services required to be performed for the state or county; for it is also another well-settled rule that, in the construction of statutes declaring or affecting rights and interests, general words do not include the state or affect its rights, unless it be especially named, or it be clear, by necessary implication, that the state was intended to be included. * * * Counties are civil divisions of the state for political and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government. * * * It follows then, that counties, which are component and essential parts of the state, and the necessary agencies of its government,—embodiments of the public,—are no more embraced in the general words of the statute than the state itself." In that case the plaintiff sought to recover from the county of which he was clerk certain fees for services claimed to have been performed for it; and what the court may have said in respect to counties being component parts of the state, and as such not embraced in the general words of a statute prescribing fees for the performance of certain duties, applied only to the defendant county, and not to any other county of the state. In *Wortham* v. *County Court*, 13 Bush, 53, the clerk of Grayson County, insisting that, where the law does not direct by whom certain fees prescribed for the performance of official duties should be paid, the county was liable therefor, sought to recover from it compensation under a statute which allowed him to charge twenty-five cents for each order made in the county court. Mr. Justice ELLIOTT, replying to the contention, said: "It is sufficient answer to state that the state and county governments of this country never become debtors, by implication, to any of their agents, and that in order to hold them, or any of them, responsible for a claim, the claimant must show a legal obligation on their part to pay it."

3.   In the case at bar the defendant, as the clerk of Union County, was not the agent of Baker County, and owed the latter no duties, except such as he was obliged to perform for private parties; and, the statute having prescribed that he might charge such parties a fee of ten cents a folio for copies of the records and files of his office, we think he is entitled to receive from Baker County such sum therefor.

4.   Whatever the rule may be, however, in respect to the right of a public officer to demand from a private party the payment in advance of fees as a condition precedent to the performance of official duty, such a rule cannot, in the absence of express legislative authority, be applicable to a county, which, as a component part of the state, is a *quasi* public corporation.   The authority to audit and allow claims against a county is vested in the county court, and, while the rate of compensation to which the defendant is entitled for the performance of his official duty is prescribed by law, the number of folios necessarily required to complete the transcripts cannot well be ascertained until the work has been completed. When this has been done, and the defendant's claim for compensation therefor has been filed, it will be incumbent upon the county court of Baker County to examine the transcripts, etc., to ascertain whether the work has been done as required by law, and to compute the number of folios necessarily included therein, in order to determine the sum due, and to issue a county warrant in evidence thereof.   No statute can be found that directly or by reasonable intendment authorizes a public officer to demand payment in advance of his fees from a county.

5.   It is argued, however, that Art. I, § 18 of the Constitution of Oregon, authorizes such a demand.   That section is as follows: "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor, except in case of the state, without such compensation first assessed and tendered."   In *Daly* v. *Multnomah County,* 14 Or. 20 (12 Pac. 11), in construing a statute providing that, "in all criminal actions and proceed-

ings, witnesses residing within two miles of the place of trial, or the place where they are required to appear and testify, shall not be entitled to receive either witness fees or mileage,'' it was held that it did not contravene the section of the organic act under consideration, and that the services of witnesses in such cases are not ''particular services,'' within the meaning of that clause, but are of the class of general services which every man is bound to render for the general as well as his own individual good. To the same effect, see *Morin* v. *Multnomah County*, 18 Or. 163 (22 Pac. 490).

But if it be assumed that the making of the required transcripts constitutes ''particular services,'' within the meaning of the clause of the constitution alluded to, even then we do not think the defendant can demand from Baker County the payment of his fees in advance; for, the State of Oregon being exempt from the necessity of tendering such fees in advance, a county, which is a governmental division of the state, must also be exempted, on the principle that the greater includes the less. Judge COOLEY, in his work on Constitutional Limitations (6 ed.), p. 692, in discussing this question, says: ''When the property is taken directly by the state, or by any municipal corporation by state authority, it has been repeatedly held not to be essential to the validity of a law for the exercise of the right of eminent domain that it should provide for making compensation before the actual appropriation. It is sufficient if provision is made by the law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it. The decisions upon this point assume that, when the state has provided a remedy, by resort to which the party can have his compensation assessed, adequate means are afforded for its satisfaction, since the property of the municipality or of the state is a fund to which he can resort without risk of loss.'' In *Branson* v. *Gee*, 25 Or. 462 (36 Pac. 527, 24 L. R. A. 355), it was held, in construing a statute authorizing a road supervisor summarily to take from the owner materials needed for the public roads, and another statute providing that the party aggrieved by such taking might apply

to the county court to have his damages assessed, there was not a taking of property without due process of law, and that under Art. I, § 18 of the state constitution, compensation need not be made before taking the property. To the same effect, see *Cherry* v. *Lane County,* 25 Or. 487 (36 Pac. 531). The burden being imposed by law upon Baker County to secure the transcripts, the claim for making them can be presented to the county court, and, if payment thereof be denied, or the amount disputed, the right of the matter may be determined in the circuit court for that county,—an impartial tribunal competent to afford an adequate relief. The defendant therefore had no legal right to insist upon such payment in advance, or to extort a promise therefor from the officers of Baker County upon the delivery of the transcripts and papers. The compensation for the performance of the work having been fixed, the law imposes upon Baker County the obligation to pay the fees so prescribed; but such compensation cannot be recovered until the work has been completed, the transcripts, etc., delivered, and the bill therefor, as a claim against the county, presented and filed.

6. It is unnecessary to consider whether Union County has a vested right to the taxes which it had levied upon the property situated in the territory purporting to have been annexed to Baker County; for section 7 of the act under consideration provides that the latter county shall assume and pay to the former such a part of its indebtedness, existing when the act took effect, less the cost of its county buildings, furniture, and fixtures, as the assessed value for the fiscal year of 1900 of the territory so annexed bears to the total assessed value of all the property in Union County for that year. It must be assumed that the territory so annexed to Baker County had been benefited to the extent of the pro rata share of the Union County indebtedness, if any existed; and, when the legislative assembly provided that this obligation should be discharged by Baker County, no rule of court could suggest a more equitable method of determining the measure of compensation than that adopted.

7. Whether the act annexing the territory in dispute to Baker County contravenes the organic law of the state in respect to imposing upon Union County an unequal part of the state taxes, it is also unnecessary to inquire; for this proceeding is not instituted to collect such tax, and the rule is quite uniform that the court will not, in a collateral proceeding, declare a state unconstitutional: *Stevens* v. *Carter,* 27 Or. 553, (40 Pac. 1074, 31 L. R. A. 342).

8. Section 1 of the act under consideration provides "that all that portion of the State of Oregon embraced within the following boundary lines, and heretofore a part of Union County, be and the same hereby is made a part of Baker County, to wit: Commencing at the intersection of the township line between townships six (6) and seven (7) south, range forty (40) east, with Powder River; thence east on said township line to the center of range forty-two (42) east; thence north to the township line between townships five (5) and six (6) south; thence east on said township line between townships five (5) and six (6) south to the Wallowa County line; thence easterly along the Wallowa County line to Snake River; thence up and along Snake River to the mouth of Powder River; thence up and along Powder River to the place of beginning:" Laws, 1901, p. 435. The southern boundary of Wallowa County from the source of the Minum River is in an easterly direction along the summit of the Powder River Mountains to a point about twenty miles due west from Snake River; thence due east to what is known as "Limestone Point," on the east line of the State of Oregon: Hill's Ann. Laws, § 2282. From an examination of a map of the state, it would appear that the line of Baker County, as described in the act under consideration, in the call extending east between townships 5 and 6 south, does not intersect, but runs south of, the summit of the Powder River Mountains; and it is contended by defendant's counsel that this fact renders the act describing the territory in dispute void for uncertainty.

In order to ascertain where the power lies to assess property and collect taxes therefrom, to determine the jurisdiction

of courts over the subject-matter of civil and criminal actions, of probate matters, and of the right of a citizen to vote for county officers, the location of the boundary of a county ought to be reasonably certain. These and many other reasons might be given to show that the boundaries of a county ought to be fixed definitely by the legislative assembly, and assuming, without deciding, that the rule in that respect is the same as that for construing the descriptive part of a conveyance of real property, we will examine the act under consideration, to see if it is void for uncertainty. In prescribing a rule of evidence for construing doubtful descriptions in a conveyance of real property, our statute contains the following provision: ''When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount'': Hill's Ann. Laws, § 855, subd. 2. In *Hale* v. *Cottle,* 21 Or. 580 (28 Pac. 901), it was held that the rule that monuments control courses and distances in construing descriptions of land is not an inflexible one, and if it appear from the face of a conveyance, in the light of surrounding circumstances, that the courses and distances, as given, correctly describe the land intended to be conveyed, they will, of course prevail. In *White* v. *Luning,* 93 U. S. 514, it was held that the rule that monuments, natural or artificial, rather than courses and distances, control in the construction of a conveyance of real estate, will not be enforced, when the instrument would be thereby defeated, and when the rejection of a call for a monument would reconcile other parts of the description, and leave enough to identify the land. It is possible that the line, commencing at the point indicated, and extending east between townships 5 and 6 south, would intersect the south boundary of Wallowa County, but, if such is not the case, it would be extremely difficult to locate the line with any degree of certainty; for no point in the south boundary of said county having been indicated, to which the line from the center of the north boundary of township 42 east, range 6 south, was extended, it follows that as many lines, at different angles, could be run from the

center of said township, as there are separate points on the
south boundary of Wallowa County, the length of which is
about forty miles. Under these circumstances, we cannot dis-
regard the course given, and adopt the boundary indicated.
In *Fratt* v. *Woodward*, 32 Cal. 219 (91 Am. Dec. 573), it is
held that the law will presume a straight line was intended in
a description of land in a deed, when the call is simply from
one monument to another; but when the call is from a monu-
ment to a creek, without naming a given point, the creek is not
a monument in the sense of that rule. In the case at bar, no
point having been designated in the south boundary of Wal-
lowa County, to which the line was to be extended, the summit
of the Powder River Mountains, which constitutes said bound-
ary, is not a monument; and it must be disregarded, unless it
should be discovered that an extension of the line indicated
intersects the south boundary of Wallowa County at any point
from which the line necessarily follows said boundary to the
Snake River. Where the description in a deed is true in part,
but not in every particular, so much of the description as is
false is rejected, and the instrument will take effect if a suffi-
cient description remains to ascertain its application: 1 Green-
leaf, Evidence, § 301. Applying this rule to the boundary of
Baker County as indicated by the act under consideration, we
think the legislative assembly intended the line to be run on a
due east course from the center of the boundary of said town-
ship 42 east, to the Snake River, unless it intersected the south
boundary of Wallowa County, by disregarding which the de-
scription is sufficiently certain.

9. It is contended by defendant's counsel that the act at-
tempting to annex the disputed territory to Baker County is a
local and special law; that more than eight hundred regis-
tered electors reside in said territory, who are interested in the
question of annexation; and that, no provision having been
made by the legislative assembly that the act should be sub-
mitted to them, to be operative or not in accordance with their
vote, it contravenes the constitution of the state, Art. I, § 21,
which is as follows: ''No *ex post facto* law, or law impairing

the obligations of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution; provided that laws locating the capital of the state, locating county seats, and submitting town and corporate acts, and other local and special laws, may take effect or not, upon a vote of the electors interested." It is argued that the clause of the constitution that "local and special laws may take effect or not, upon a vote of the electors interested," is a limitation of power, and prohibits the legislative assembly from making the act annexing said territory to Baker County to take effect, except upon the authority of their votes in favor thereof. In *Maxwell* v. *Tillamook County,* 20 Or. 495 (26 Pac. 803), Mr. Justice LORD, in defining the terms "local" and "special," as applicable to and qualifying statutes, says: "In general language, a local statute may be said to be one that is operative only within a portion of the state, and a special statute is one that is applicable to particular individuals or things." According to this definition, the act attempting to annex a part of Union County to Baker County is evidently local and special.

10.   It remains to be seen whether the constitution of the state requires the act to be submitted to the electors interested before it could become operative. If the word "may," as used in Art. I, § 21, of the organic act of the state, is to be construed as "must," making it obligatory upon the legislative assembly to submit all local and special laws to a vote of the electors interested, to take effect or not, in accordance with their expressed will as evidenced by a majority of their votes cast, such a conclusion would necessarily render nugatory many acts of the legislative assembly that have been regarded as valid, thereby disturbing titles and producing incalculable injury to those having made investments on the faith thereof. It will be conceded, we think, by disinterested persons, that such a construction of local and special statutes should be avoided, unless the constitution clearly and in unmistakable terms commands that such acts should be submitted to the electors interested for their approval before they become

operative. The clause, "provided that laws locating the capital of the state, locating county seats, and submitting town and corporate acts, and other local and special laws, may take effect or not, upon a vote of the electors interested" (Const. Or. Art. I, § 21), is, in our opinion, neither a grant nor a limitation of power, but qualifies the preceding clause, and excepts therefrom the particular acts enumerated in the qualifying clause, which the legislative assembly, in its discretion, may submit to the electors interested for their approval or rejection.

In *McWhirter* v. *Brainard*, 5 Or. 426, the court, in speaking of an act providing for the location of a county seat at either of five designated places, as the electors of the county might declare by a majority vote, says: "The power of location is exercised by the legislative assembly, but it takes effect in a particular mode, or not at all, by a vote of the electors interested." It is maintained that the language quoted is directly in point, and the authority controlling in this case. If it was meant by the decision relied upon that all local and special laws must be submitted to the electors interested for their approval by a majority vote before such acts could become operative, we cannot yield our consent to such a conclusion. The court was evidently discussing the necessity for complying with the provisions of an act which required that the location of a county seat should be determined by a vote of the electors interested, and what was there said must apply to the particular facts involved; that is, the legislative assembly having prescribed the mode in which the act was to take effect, the method indicated was exclusive, and, if not pursued, the act could not take effect. We do not think the constitution of this state makes it obligatory upon the legislative assembly in any instance, except in the original selection or subsequent relocation of the seat of government (Const. Or. Art. XIV, §§ 1, 3), to submit a local or special act to the electors interested for their determination by a majority vote before such act can become operative; but it may, in its discretion, so submit local and special laws, and when it does so the manner prescribed must

be pursued before the act can become operative. As was said in *McWhirter* v. *Brainard*, "It takes effect in a particular mode, or not at all, by a vote of the electors interested." We do not wish to be understood as intimating that if the legislative assembly, in its discretion, had seen fit to submit the question of annexation of the disputed territory to Baker County, the electors residing in the territory affected by the change were the only ones interested therein. The legislative assembly is vested with plenary power, and may divide counties at its pleasure, apportioning the common property and common burdens in such manner as to it may seem reasonable and equitable [*Morrow County* v. *Hendryx*, 14 Or. 397 (12 Pac. 806) ; *Templeton* v. *Linn County*, 22 Or. 313 (29 Pac. 795, 15 L. R. A. 730)], provided no county shall be reduced to an area of less than four hundred square miles (Const. Or. Art. XV, § 6).

11.   It is contended by defendant's counsel that the legislative assembly on February 7, 1899, having apportioned the senators among the several counties of the state according to the population of each, and placed Union County in the Twenty-Second and Twenty-Fourth districts, was powerless, until another enumeration of the inhabitants had been made by the United States or this state, to change the boundaries of said districts, or to transfer any of the inhabitants of the territory purporting to have been annexed to Baker County to the Twenty-Fifth senatorial district, and that its attempt to do so violates the state constitution, Art. IV, §§ 3, 5, 6, and 7. The sections referred to are as follows :

"Sec. 3. The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may from time to time be divided by law."

"Sec. 5. The legislative assembly shall, in the year eighteen hundred and sixty-five, and every ten years after, cause an enumeration to be made of all the white population of the state."

"Sec. 6. The number of senators and representatives shall, at the session next following an enumeration of the inhabitants by the United States or this state, be fixed by law, and appor-

tioned among the several counties according to the number of white population in each. And the ratio of senators and representatives shall be determined by dividing the whole number of white population of such county or district by such respective ratios; and when a fraction shall result from such division, which shall exceed one half of such ratio, such county or district shall be entitled to a member for such fraction. And in case any county shall not have the requisite population to entitle such county to a member, then such county shall be attached to some adjoining county for senatorial or representative purposes.''

''Sec. 7. A senatorial district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating senatorial districts.''

It is argued that the legislative assembly, having apportioned the number of senators among the several counties of the state, exhausted the measure of power delegated, and was without authority, until another federal or state enumeration of the inhabitants was taken, to make a reapportionment. In support of this principle several cases are cited, but in most of them the constitutions of the respective states prohibited a reapportionment until another enumeration could be taken. Thus, in *People ex rel.* v. *Holihan,* 29 Mich. 116, it was held that the legislature had no authority to enlarge the boundaries of a city by annexing to it parts of adjoining townships in such manner as to interfere with the boundaries of representative districts at a time when any alteration therein was forbidden by the constitution, which provided for the apportionment of senators and representatives among the counties and districts according to the number of inhabitants in 1854 and every ten years thereafter, and also contained the following clause: ''Each apportionment and the division into representative districts by any board of supervisors shall remain unaltered until the return of another enumeration.'' In *People ex rel.* v. *Board of Sup'rs,* 147 N. Y. 1 (41 N. E. 563, 30 L. R. A. 74), by an act of the legislature of New York a part of the

county of Westchester was annexed to the county of New York, and it was contended that said act violated the constitution of that state, which provided that an enumeration of the inhabitants should be taken in the year 1905, and every tenth year thereafter, and directed that the senate districts "shall be so altered by the legislature at the first regular session after the return of every enumeration, that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact a form as possible, and shall remain unaltered until the return of another enumeration, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in one county." It was held that the power to divide counties or towns, and erect new counties and towns, or to change their boundaries, is conferred by the general grant of legislative power, but the time and mode of exercising which are in the discretion of the legislature, unless restrained by other provisions or arrangement of the constitution. It will be observed that the constitutions of Michigan and New York contain express prohibition against the alteration of representative and senatorial districts after they have been established in pursuance of the mode prescribed. Union County was not divided for the purpose of creating a senatorial district, but the boundaries of the senatorial districts were changed to conform to the amended boundaries of Baker and Union counties. The legislative assembly provided that the territory annexed to Baker County should be exempt from the civil and military jurisdiction of Union County, and subject to the civil and military jurisdiction of Baker County. This provision, in our judgment, is broad enough to entitle the qualified electors in the territory so annexed to vote in Baker County for all purposes. In *Pulaski County* v. *Judge of Saline County*, 37 Ark. 339, it was held that transferring a part of a county in one senatorial district to another county in a different senatorial district constitutes no change in those districts. They are composed

of the same counties as before. Counties, not territory or inhabitants, are the constituents of the districts.

No error having been committed by the court in sustaining the demurrer, it follows that the judgment is affirmed.

AFFIRMED.